**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Cindy M. Magelky, | ) | |
| | ) | **ORDER GRANTING IN PART AND** |
| Plaintiff, | ) | **DENYING IN PART PLAINTIFF'S** |
| | ) | **MOTIONS IN LIMINE** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:06-cv-025 |
| BNSF Railway Company, | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are the Plaintiff's Motions in Limine filed on June 15, 2007. On July 19, 2007, the Defendant filed a response in opposition to the motions. The Plaintiff filed a reply brief on August 10, 2007. For the reasons set forth below, the Court grants in part and denies in part the motions in limine.

## I.    <u>BACKGROUND</u>

The facts of the alleged incident were set forth in the Court's "Order Denying Plaintiff's Motion for Partial Summary Judgment." <u>See</u> Docket No. 35. On July 3, 2004, the plaintiff, Cindy Magelky, was a conductor on a coal train for the defendant, BNSF Railway Company (BNSF), when the train lost air pressure and came to an emergency stop. Magelky contends that as she walked along the train to investigate the problem, she slipped and fell down a slope. Magelky filed a complaint against BNSF on March 23, 2006. Magelky has filed twelve motions in limine in which she seeks: the exclusion of sixteen pieces of personal information; exclusion of Magelky's discussions with and the observations of a taxi driver who transported her after the incident;

exclusion of evidence that the train's coupler was in proper and safe operating condition; exclusion of evidence that Magelky was eligible for or received retirement benefits; to have the jury advised that Magelky is not covered by worker's compensation and this action is her sole remedy; exclusion of evidence of Magelky's alleged failure to mitigate her damages; exclusion of evidence that Magelky received employment offers from BNSF after the incident; to permit Magelky to examine potential adverse witnesses with leading questions; exclusion of evidence that Magelky assumed the risk of injury; to inform the jury that it may not decrease its award based on federal or state income taxes; exclusion of evidence of past or pending claims against BNSF made by Magelky or potential witnesses; and the exclusion of evidence of past disciplinary action taken against Magelky or potential witnesses.

## II.   **LEGAL DISCUSSION**

The Federal Rules of Evidence dictate the outcome of most of Magelky's motions.  Rules 401, 402, and 403 of the Federal Rules of Evidence establish which evidence is relevant and admissible.  Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  It is well-established that a "district court is afforded wide latitude in determining issues of relevancy . . . ." Suggs v. Stanley,

324 F.3d 672, 682 (8th Cir. 2003) (citing EFCO Corp. v. Symons Corp., 219 F.3d 734, 739 (8th Cir. 2000)).

A.      **MAGELKY'S PERSONAL INFORMATION**

1.      **BANKRUPTCY**

Magelky contends that evidence of her bankruptcy and the bankruptcy of a former husband should be excluded because it lacks relevance and, if admitted, would be unfairly prejudicial.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial, confuse the issues, mislead the jury, and result in undue delay and a waste of time.  Therefore, such evidence shall be excluded pursuant to Rule 403 of the Federal Rules of Evidence.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of her prior bankruptcy and her ex-husband's bankruptcy (Docket No. 36).  However, if Magelky chooses to pursue a claim for the recovery of non-economic damages at trial, the Court will revisit this issue.[1]

2.      **MAGELKY'S CHILDREN**

Magelky contends that evidence of her decision to relinquish her parental rights to three of her four children, or evidence of disputes directly or indirectly involving her children, should be excluded on relevancy grounds.  The Court finds that evidence of Magelky's decision to relinquish her parental rights, even if relevant, would be unfairly prejudicial, mislead the jury, and result in undue delay and a waste of time.  Therefore, such evidence shall be excluded pursuant to Rule 403

---

[1]  Non-economic damages are defined under North Dakota law as follows: "damages arising from pain, suffering, inconvenience, physical impairment, disfigurement, mental anguish, emotional distress, fear of injury, loss or illness, loss of society and companionship, loss of consortium, injury to reputation, humiliation, and other nonpecuniary damage."  N.D.C.C. § 32-03.2-04.

of the Federal Rules of Evidence.  However, Magelky has not provided the Court with sufficient evidence of other disputes directly or indirectly involving her children to determine whether such evidence is relevant.  At this stage, the Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of issues involving her children (Docket No. 36) but only to the extent that such evidence relates to the decision to relinquish her parental rights.  The Court will reserve ruling on the admissibility of other disputes involving her children.

### 3.       MAGELKY'S MARRIAGES AND DIVORCES

Magelky contends that evidence of her previous marriages, child support disputes, and allegations of abuse lack relevance.  The Court finds that such evidence, even if relevant, would be unfairly prejudicial, would confuse the issues, mislead the jury, and result in a waste of time. Therefore, such evidence shall be excluded pursuant to Rule 403 of the Federal Rules of Evidence. The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of disputes and allegations from her previous marriages (Docket No. 36) but only to the extent that such evidence relates to her claim for economic damages.  The Court may reconsider the matter if Magelky chooses to pursue a claim for non-economic damages because this evidence may be relevant to such a claim.  For example, if at trial Magelky claims that her emotional distress and psychological problems are related to the slip-and-fall accident on July 3, 2004, evidence of marital disputes or abuse may be relevant, particularly if the medical records reveal that Magelky has suffered and continues to suffer emotional trauma which is, in part, related to her prior marriages and divorces. At this stage, the Court does not have sufficient information before it to summarily exclude all such evidence at trial.

### 4.    <u>MAGELKY'S LEGAL DISPUTES</u>

Magelky argues that evidence of her sale of a ring that resulted in a lawsuit and settlement, and "all of the other personal disputes" in her life, are not relevant.  The Court finds that evidence of Magelky's sale of a ring is not relevant and, therefore, shall be excluded pursuant to Rules 402 and 403 of the Federal Rules of Evidence.  However, Magelky has not provided the Court with sufficient information at this stage of "all of the other personal disputes" in her life in order for the Court to determine whether such evidence may be relevant.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of her legal disputes (Docket No. 36) but only to the extent that the evidence relates to the sale of the ring and the resulting litigation.  The Court will reserve ruling on the admissibility of "all of the other personal disputes" in Magelky's life.

### 5.    <u>MAGELKY'S RELATIONSHIPS WITH HER CHILDREN</u>

Magelky argues that evidence of her relationships with her children, including but not limited to her son's juvenile criminal charge, is not relevant and, if admitted, would be unfairly prejudicial.  BNSF agrees that evidence of the juvenile charge against Magelky's son shall be excluded.  The Court finds that evidence of Magelky's son's juvenile criminal charge is not relevant and shall be excluded pursuant to Rules 402 and 403 of the Federal Rules of Evidence.  However, Magelky has not provided the Court with sufficient evidence of her "relationships with her children" to determine whether such evidence is relevant.  Evidence of Magelky's relationships with her children and stress that may have caused in her life <u>may be</u> relevant to a claim for the recovery of non-economic damages but at this stage it is too early to tell.  The Court **GRANTS** Magelky's motion in limine

(Docket No. 36) but only to the extent that the evidence at issue relates to her son's juvenile criminal charge.

### 6.        WITNESSES' CRIMINAL HISTORIES

Magelky contends that evidence of witnesses' criminal histories should be excluded because Rule 609 of the Federal Rules of Evidence is not satisfied.  Rule 609 establishes that:

> For the purpose of attacking the character for truthfulness of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
> (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Magelky claims that none of the expected witnesses who will testify at trial has committed crimes punishable by death or imprisonment of more than one year and has not committed crimes of dishonesty or false statement. The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of the criminal histories of expected witnesses (Docket No. 36) but only to the extent that the witnesses' criminal histories do not satisfy the requirements of Rule 609 of the Federal Rules of Evidence.  At this stage, there has been insufficient information presented to the Court to make any conclusive determination on this issue.

### 7.   TERRY BERGER'S ACTIONS AS LOCAL UNION CHAIRMAN

Magelky argues that evidence of actions taken by her former husband, Terry Berger, who was the local union chairman at the time of the incident, to assist Magelky after the slip-and-fall incident lacks relevance.  Magelky claims that BNSF plans to introduce evidence that Berger contacted union-designated counsel, requested information about a new version of BNSF's medical release, and requested the dispatch transcript, as evidence of an alleged scheme to fabricate Magelky's injuries for the purpose of receiving a settlement from BNSF.  The Court finds that this evidence may be admissible pursuant to Rule 402 of the Federal Rules of Evidence because it may be relevant to the alleged incident and injuries.  However, at this stage there has been insufficient information presented to the Court to make any determination on admissibility.  The Court **DENIES** Magelky's motion in limine that seeks to exclude evidence of actions taken by Terry Berger and will wait until trial to assess the relevance and admissibility of such evidence (Docket No. 36).

### 8.   ALLEGATIONS AGAINST MAGELKY

Magelky contends that evidence of an alleged plan to fabricate her injuries is not relevant. Magelky claims that BNSF plans to introduce the testimony of several individuals who were allegedly told by Magelky that she intended to suffer an injury while working for BNSF so she could receive a large settlement.  Rule 804(b)(3) of the Federal Rules of Evidence establishes that a statement against interest is an exception to the hearsay rule:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

This type of evidence <u>may be</u> admissible pursuant to Rule 804(b)(3) of the Federal Rules of Evidence.  The evidence <u>may also be</u> admissible as an admission of a party-opponent under Rule 801(d)(2).  The Court **DENIES** Magelky's motion in limine that seeks to exclude evidence of allegations that she planned to fabricate her injuries (Docket No. 36).  It is up to the jury to assess the credibility of any witnesses who testify at trial concerning these alleged admissions of Magelky's.  There is no factual or legal basis to exclude all such evidence at trial based on what has been presented to the Court to date.


### 9.    MAGELKY'S PRE-INJURY LEAVE OF ABSENCE

Magelky contends that evidence of a leave of absence that she took shortly before the slip-and-fall incident and after her mother suffered a stroke is not relevant.  The slip-and-fall incident occurred the day Magelky returned to work from her leave of absence.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial, mislead and confuse the jury, and result in undue delay and be a waste of time.  This evidence shall be excluded pursuant to Rule 403 of the Federal Rules of Evidence.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence concerning her pre-injury leave of absence (Docket No. 36).


### 10.    MAGELKY'S MEDICAL CONDITIONS

Magelky argues that evidence of her history of depression and a previous suicide attempt lacks relevance.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial, mislead and confuse the jury, and result in undue delay and a waste of time.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of her medical history (Docket No. 36)

but only to the extent that such evidence relates to her claim for the recovery of economic damages.

Magelky's history of depression, or prior suicide attempts, may indeed be relevant depending on her

testimony at trial, the state of the medical records, and whether Magelky pursues a claim for non-

economic damages.  For example, if Magelky chooses to pursue a claim for non-economic damages

at trial and attributes her pain, suffering, and other non-economic damages to the slip-and-fall

incident, such evidence <u>may be</u> relevant, particularly if the medical/psychological records reveal a

history of depression that has pervaded Magelky's life and continues to the present date.  A review

of Dr. Robert Cooper's report, and particularly his review of the medical records, seems to bear this

out.  The Court will reserve ruling on this subject matter until trial.


### 11.    DRUG AND ALCOHOL USE

Magelky also contends that evidence of the following is not relevant:  her use of prescription

pain medication before and after the incident; her addiction to Hydrocodone after the incident; her

alleged heavy drinking while married to Keith Magelky and Terry Berger; and Terry Berger's

drinking habits.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial,

confuse the issues, mislead the jury, and result in undue delay.  Therefore, such evidence shall be

excluded pursuant to Rule 403 of the Federal Rules of Evidence. The Court **GRANTS** Magelky's

motion in limine that seeks to exclude evidence of past drug and alcohol use (Docket No. 36) but

only to the extent such evidence relates to her claim for economic damages.  For reason(s)

previously noted, the Court will reconsider this matter if Magelky chooses to pursue a claim for non-

economic damages.  Such evidence <u>may be</u> relevant based on Magelky's testimony at trial and the

state of the medical records.  In other words, a chronic history of drug and alcohol abuse may indeed

be relevant to rebut a claim for non-economic damages, particularly if the medical/psychological records reveal a history of abuse that has caused, and continues to cause, emotional trauma, depression, anxiety, or other psychological problems for the plaintiff.  The Court will reserve ruling on this subject until trial.

### 12.      MAGELKY'S LONG-TERM MEDICAL CONDITIONS

Magelky contends that evidence of treatment for medical conditions that she has had before and after the incident lack relevance.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of her long-term medical conditions (Docket No. 36) but only to the extent that such evidence relates to a claim for economic damages.  The Court will reconsider this subject if Magelky chooses to pursue a claim for non-economic damages at trial.  Again, such evidence may be relevant and admissible depending upon Magelky's testimony at trial and the state of the medical records.  This type of evidence may be relevant if Magelky's "long-term medical conditions" have caused, or continue to cause, emotional trauma, depression, anxiety, or other psychological problems which relate to a claim for non-economic damages.  The Court will reserve ruling on this subject matter until trial.

### 13.      MAGELKY'S ACCIDENTS

Magelky contends that evidence of prior accidents or vehicle collisions that occurred before or after the slip-and-fall are not relevant.  The Court finds that this evidence may be relevant to the slip-and-fall incident and the alleged injuries sustained.  For example, the medical records reveal that Magelky's headaches worsened after an automobile accident that she was involved in.  Magelky also

10

apparently had a 20-gallon fish tank fall on her head in February 2005.  If the medical evidence presented at trial supports a finding that these and other accidents have contributed to her current neck and back problems, such evidence may be admissible.  The Court at this stage **DENIES** Magelky's motion in limine that seeks to exclude evidence of previous accidents (Docket No. 36). This subject may be revisited at trial.

### 14. ALLEGATIONS OF ILLEGAL DRUG TRANSACTIONS

Magelky argues that evidence of Keith Magelky's claim that Cindy Magelky provided him and his friends with pain medication is not relevant.  The Court finds that this evidence, even if relevant, would likely be unfairly prejudicial, confuse the issues, mislead the jury, and result in undue delay. Therefore, such evidence shall be excluded pursuant to Rule 403 of the Federal Rules of Evidence.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of allegations that Magelky distributed pain medication to others (Docket No. 36).  However, the Court may reconsider this ruling if the direct or cross-examination of Keith Magelky "opens the door" to inquiry on this subject.

### 15. MAGELKY'S HANDICAPPED PARKING PERMIT

Magelky contends that evidence of her possession of a handicapped parking permit lacks relevance.  Magelky's doctor prescribed a handicapped parking permit because of her chronic asthma.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial and shall be excluded pursuant to Rule 403 of the Federal Rules of Evidence. The Court **GRANTS** Magelky's

motion in limine that seeks to exclude evidence that she possesses a handicapped parking permit (Docket No. 36).

### 16.    MAGELKY'S MEDICAL RECORDS

Magelky contends that all of her medical records should be redacted in accordance with her motions in limine.  The redaction of medical records is not a duty of the Court.  The Court **DENIES** Magelky's motion in limine that seeks the redaction of medical records (Docket No. 36).

### B.    TAXI DRIVER'S TESTIMONY

Magelky argues that evidence of inferences, theories, or conclusions made by a taxi driver about Magelky's medical condition during her taxi ride from Medina, North Dakota to Mandan, North Dakota, following the slip-and-fall incident should be excluded.   Magelky argues that only testimony or evidence as to the taxi driver's personal observations should be allowed.  Rule 701 of the Federal Rules of Evidence establishes that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pursuant to Rule 701, the taxi driver's testimony will be limited to what he observed as he transported Magelky from Medina to Mandan.  For example, the taxi driver will not be permitted to express an opinion as to whether Magelky's hand was broken or appeared to be broken.  However, the taxi driver can certainly testify as to what he observed Magelky say or do while a passenger in the cab, i.e., how she used her hand and/or whether she appeared to be in pain.  The

Court **GRANTS** Magelky's motion in limine that seeks to exclude a taxi driver's testimony that goes beyond his observations of her physical condition and any admissions that she may have made while riding in the cab (Docket No. 36).

### C.   CONDITION OF THE TRAIN'S COUPLER

Magelky contends that evidence of BNSF's claim that no visible defect was present on the coupler at the time of the incident and, therefore, the coupler was in proper and safe operating condition, should be excluded. Magelky alleges that BNSF is only capable of making this argument because it either failed to save the broken coupler or failed to write a sufficient report as mandated by BNSF's safety rules. Magelky also contends that any argument presented by BNSF about the broken coupler should be excluded because of spoliation. The Court finds that this evidence is relevant to the alleged incident and injuries and is admissible pursuant to Rule 402 of the Federal Rules of Evidence. The Court **DENIES** Magelky's motion in limine that seeks to exclude evidence of BNSF's claim that the coupler was in proper operating condition at the time of the accident (Docket No. 36).

### D.   MAGELKY'S RETIREMENT BENEFITS

Magelky argues that evidence of retirement benefits or other payments she received after the slip-and-fall is not admissible at trial because such payments are collateral sources. BNSF states that Magelky had less than one year of employment with BNSF and was not eligible for retirement benefits. BNSF further indicates that it will not introduce evidence of advances or disability benefits Magelky may have received. The Court finds that retirement benefits or other payments Magelky

received after the alleged slip-and-fall incident are not admissible pursuant to the collateral source rule.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of collateral sources (Docket No. 36).

### E.    MAGELKY'S INABILITY TO RECEIVE WORKERS' COMPENSATION

Magelky contends that she should be permitted to inform the jury that she is not covered by workers' compensation, and that the Court should instruct the jury that workers' compensation does not cover her injuries.  An instruction that Magelky is not eligible for workers' compensation may prejudice BNSF if the jury is swayed to find for Magelky because of its concern that she may not be otherwise compensated for her injuries.  See Schmitz v. Canadian Pac. Ry. Co., 454 F.3d 678, 685 (7th Cir. 2006); Stillman v. Norfolk & W. Ry. Co., 811 F.2d 834, 838 (4th Cir. 1987) (holding that the plaintiff's "ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information could have prejudiced the Railroad.").  In Schmitz, the Seventh Circuit Court of Appeals held that the "district court properly declined to instruct the jury that Schmitz was ineligible for workers' compensation payments."  454 F.3d at 685.  The Court **DENIES** Magelky's motion in limine that seeks to have the jury informed that she is not eligible for workers' compensation (Docket No. 36).  Neither party will be permitted at trial to argue to the jury that Magelky is not covered by workers' compensation or that Magelky's sole source of recovery is the Federal Employers' Liability Act (FELA) lawsuit.

### F.     MITIGATION OF MAGELKY'S DAMAGES

Magelky contends that evidence of her alleged failure to mitigate damages should be excluded.  BNSF argues that the medical records will reveal that Magelky elected on numerous occasions not to take part in physical therapy sessions on her shoulder.  The Court finds that this evidence is relevant and admissible pursuant to Rule 402 of the Federal Rules of Evidence.  The Court **DENIES** Magelky's motion in limine that seeks to exclude evidence of her failure to mitigate damages (Docket No. 36).  Under North Dakota law, every person has a duty to take reasonable steps to minimize or mitigate her damages.  If Magelky chose not to take part in physical therapy sessions on her shoulder before or after surgery, she will have an opportunity at trial to explain to the jury why she made that decision and the jury will need to determine whether that decision was reasonable under the circumstances.  The Court is unaware of any case law which stands for the proposition that an injured plaintiff need not take any steps to minimize or mitigate damages.

### G.     MAGELKY'S ALTERNATIVE EMPLOYMENT OPPORTUNITIES

Magelky argues that evidence of her alleged failure to mitigate damages by refusing to accept alternative employment opportunities with BNSF should be excluded.  The Court finds that this evidence is relevant and admissible at trial.  The Court **DENIES** Magelky's motion in limine that seeks to exclude evidence of her failure to accept alternative employment opportunities with BNSF (Docket No. 36).  It is clear that such evidence is relevant because there is a duty under North Dakota law to minimize or mitigate damages.  See Hanson v. Boeder. 727 N.W.2d 280, 283 (N.D. 2007) ("A person injured by the wrongful acts of another has a duty to mitigate or minimize

damages . . . .").  Such evidence is clearly relevant and it is for the jury to determine whether a refusal to accept any employment is reasonable under the circumstances.


### H.   EXAMINATION OF ADVERSE WITNESSES

Magelky requests an order permitting the use of leading questions when examining current and former BNSF officers and employees.  Magelky also seeks an order prohibiting BNSF from asking leading questions of its officers.  Rule 611(c) of the Federal Rules of Evidence establishes that:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.  Ordinarily leading questions should be permitted on cross-examination.  When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Rule 611(c) clearly establishes the proper use of leading questions.  There is no need for the Court to issue orders addressing the use of leading questions at trial as Rule 611(c) will be followed.  The Court **DENIES** Magelky's motion in limine that seeks an order permitting the use of leading questions (Docket No. 36).


### I.   MAGELKY'S ASSUMPTION OF RISK

Magelky contends that evidence of her assumption of risk while working for BNSF should be excluded because the assumption of risk defense has been abolished under FELA.  BNSF agrees that it is not allowed to argue that Magelky assumed a risk while working for BNSF.  BNSF contends that it is entitled to argue that its only duty under FELA was to provide a safe workplace, and that it may present evidence of contributory negligence on the part of Magelky.  It is clear and

undisputed that the defense of assumption of risk is not allowed under FELA.  However, BNSF may introduce evidence of a safe workplace and Magelky's alleged contributory negligence.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of her alleged assumption of risk (Docket No. 36) but not the exclusion of evidence of contributory negligence or comparative fault.

### J.       FEDERAL AND LOCAL INCOME TAXES

Magelky argues that if the jury is instructed that it may not increase the amount of its damage award because of state or federal income taxes, the jury should also be instructed that it may not decrease any award because of tax consequences.  Magelky argues that if the jury is to be informed of the tax consequences to her, the jury should also be informed of the tax consequences to BNSF. At this stage, the Court **DENIES** Magelky's motion in limine that seeks to have the jury instructed on the tax implications of any damage award (Docket No. 36).  The subject can be revisited at the time jury instructions are addressed.

### K.       DAMAGE CLAIMS MADE AGAINST BNSF

Magelky argues that evidence of past or current claims for damages made by her or other potential witnesses against BNSF should be excluded.  No further information has been provided to the Court.  Evidence of claims made by Magelky or other witnesses against BNSF <u>may be</u> admissible to show bias or prejudice.  The Court will defer ruling on any such evidence until trial.

### L.     DISCIPLINARY ACTION AGAINST MAGELKY

Magelky contends that evidence of past disciplinary action taken against Magelky or other potential witnesses that is unrelated to the slip-and-fall incident would be prejudicial if admitted. BNSF submits that no such evidence exists.  The Court finds that this evidence, even if relevant, would be unfairly prejudicial and is excluded pursuant to Rule 403 of the Federal Rules of Evidence as to Magelky.  The Court **GRANTS** Magelky's motion in limine that seeks to exclude evidence of past disciplinary action taken against Magelky (Docket No. 36).  However, the Court will defer ruling on any disciplinary action taken against other witnesses until trial as such evidence may be admissible to show bias or prejudice.


### III.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** in part and **DENIES** in part Magelky's motions in limine.  (Docket No. 36.)  In summary, the Court **GRANTS** Magelky's motions in limine that seek the exclusion of the following evidence:  Magelky's bankruptcy and her former husband's bankruptcy; issues involving Magelky's children but only to the extent such evidence relates to the decision to relinquish her parental rights; disputes and allegations concerning Magelky's previous marriages and divorces but only to the extent that such evidence relates to her claim for economic damages; Magelky's legal disputes but only to the extent such evidence relates to her sale of a ring; Magelky's relationship(s) with her children but only to the extent that such evidence relates to her son's juvenile criminal charge; witnesses' criminal histories but only to the extent that their criminal histories do not satisfy the requirements of Rule 609 of the Federal Rules of Evidence; Magelky's leave of absence from work up until the date of the slip-and-fall; Magelky's medical history but only

to the extent that such evidence relates to her claim for economic damages; past drug and alcohol use but only to the extent that such evidence relates to Magelky's claim for economic damages; Magelky's long-term medical conditions but only to the extent that such evidence relates to her claim for economic damages; allegations that Magelky distributed pain medication to others; Magelky's possession of a handicapped parking permit; a taxi driver's testimony that goes beyond his personal observations of the plaintiff while she was a passenger in the taxi; collateral sources of payment received by Magelky; evidence of Magelky's assumption of risk; and past disciplinary action taken against Magelky.

The Court **DENIES** Magelky's motions in limine that seek the exclusion of the following evidence: actions taken by Terry Berger as local union chairman; allegations that Magelky planned to fabricate her injuries; Magelky's prior accidents; the redaction of medical records; BNSF's claim that the coupler was in proper operating condition at the time of the accident; Magelky's ineligibility for workers' compensation benefits; Magelky's failure to mitigate or minimize damages; Magelky's failure to accept alternative employment opportunities with BNSF; an order permitting the use of leading questions; and instructions to the jury about the tax implications of any damage award.

The Court notes that much of the evidence that Magelky seeks to exclude (medical history, past alcohol and drug usage, long-term medical conditions, problems related to her multiple marriages and divorces, and the relationships with her children) may likely be relevant and admissible at trial if Magelky decides to pursue a claim for non-economic damages.  Non-economic damages include damages for pain and suffering, inconvenience, physical impairment, mental anguish, and emotional distress.  If Magelky decides to pursue a claim for non-economic damages at trial, that decision will likely "open the door" to the admissibility of most of the "garbage"

evidence to which she now objects.  Clearly, Magelky's past medical history, medical conditions, drug and alcohol abuse, psychological problems, and stressors in her life are relevant to such a claim.  The final determination as to the admissibility of this type of evidence will largely depend upon (1) Magelky's deposition and trial testimony; (2) whether Magelky decides to pursue a claim for the recovery of non-economic damages at trial; (3) the information contained in the medical, psychological, and drug/alcohol treatment records; and (4) the questions propounded by counsel as well as arguments of counsel.  All counsel are instructed to avoid directly <u>or</u> indirectly referring to any of the objectionable, "garbage" type of evidence referred to in this order in the presence of the jury – until the introduction of such evidence has been approved by the Court.  In other words, any doubt as to the admissibility of such evidence shall be first addressed in chambers or outside the presence of the jury in order to avoid any problems at trial.  The Court directs counsel to inform their clients and witnesses of this order and its prohibitions and allowances.

**IT IS SO ORDERED**.

Dated this 28th day of January, 2008.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

20