**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Cindy M. Magelky, ) | |
| ) | **ORDER GRANTING IN PART AND** |
| Plaintiff, ) | **DENYING IN PART DEFENDANT'S** |
| ) | **MOTIONS IN LIMINE** |
| vs. ) | |
| ) | |
| ) | Case No. 1:06-cv-025 |
| BNSF Railway Company, ) | |
| a corporation, ) | |
| ) | |
| Defendant. ) | |

Before the Court are the Defendant's "Motions in Limine" filed on June 18, 2007. On July 20, 2007, the Plaintiff filed a response in opposition to the motions. The Defendant filed a reply brief on August 10, 2007. For the reasons set forth below, the Court grants in part and denies in part the motions in limine.

**I.   BACKGROUND**

The facts of the alleged incident were thoroughly set forth in the Court's "Order Denying Plaintiff's Motion for Partial Summary Judgment." See Docket No. 35. On July 3, 2004, the plaintiff, Cindy Magelky, was a conductor on a coal train for the defendant, BNSF Railway Company (BNSF), when the train lost air pressure and came to an emergency stop. Magelky contends that as she walked along the train to investigate the problem, she slipped and fell down a slope. Magelky filed a complaint against BNSF on March 23, 2006. BNSF has filed nine motions in limine in which the railroad seeks exclusion of the following: causation opinion testimony of

Magelky's treating physicians that is not reflected in their medical records; certain testimony by Magelky's expert witnesses; the characterization of Magelky's alleged injuries as "serious" or "devastating;" evidence of sexual abuse allegations; evidence that BNSF's general operating rules constitute a standard of care; and evidence that BNSF violated its duty to provide a safe and suitable walkway. The trial of this case is scheduled to commence on May 19, 2008.

## II.  LEGAL DISCUSSION

### A.  MAGELKY'S TREATING PHYSICIANS' TESTIMONY

BNSF contends that testimony as to the cause of Magelky's alleged injuries by her treating physicians, Drs. Anthony Johnson, Alan Van Norman, and Dennis Wolf, should be excluded because the doctors did not provide expert witness reports, and their testimony should be limited to the findings recorded in their "clinic charts." BNSF contends that letters written by Magelky's treating physicians in May of 2007 included opinions on causation that were not previously disclosed in the medical records.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires an expert witness to provide a written report if the witness is retained or specially employed to provide expert testimony. However, a "treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999); see Fed. R. Civ. P. 26(a)(2) advisory committee note (1993). The Scheduling/Discovery Order provided that "[t]reating physicians need not prepare reports, only qualifications, unless they will express opinions not reflected in the medical records." See Docket No. 11.

BNSF argues that, pursuant to the Scheduling/Discovery Order, Magelky's treating physicians are required to prepare expert witness reports because they plan to express opinions reflected in letters disclosed in late May 2007 but not contained in the medical records. The letters written by Magelky's treating physicians were apparently based on their earlier observations and treatment of Magelky but the timing and necessity for the letters is suspect.

The record reveals that BNSF arranged for an IME to be conducted by Dr. Robert Cooper in March 2007. It is clear and undisputed that Magelky and her attorneys understood that there was a causation issue as disclosed in Dr. Cooper's detailed IME report dated March 20, 2007. Discovery ended on April 30, 2007. Based on the understanding that the opinions of Drs. Van Norman, Johnson, and Wolf would be limited to information disclosed in the medical records, BNSF understandably chose not to depose the treating physicians.

Shortly after serving notices of trial depositions to be taken of Drs. Johnson, Van Norman, and Wolf in mid-June 2007, counsel for Magelky then served separate opinion letters, or "to whom it may concern" letters, bearing the signature of each of the three treating physicians and their opinions on causation. Magelky argues that the treating physicians had "clearly disclosed" their opinions on causation in the medical records beforehand. The Court has reviewed the medical records and disagrees. There are certainly vague references to causation in the medical records from 2005-2006, but none of the treating physicians had ever expressed any clear-cut opinions on causation until the opinion letters were served in late May 2007 – and this was obviously done in response to Dr. Cooper's IME and report. The Court agrees that there should be no real surprise as to the opinions of the treating physicians but to suggest that the medical records "clearly recorded" opinions on causation before May 23, 2007, is a stretch. And any suggestion that the opinion letters

3

are simply "follow-up reports," or are reports which document additional medical care and treatment rendered, is a far stretch at best. It is obvious to the Court why the letters were issued.

Nevertheless, the Court in its discretion conditionally **DENIES** BNSF's motion in limine that seeks to exclude the causation testimony of Magelky's treating physicians (Docket No. 37). To avoid any surprise attributable to the posturing and discovery games that were played, the Court will allow counsel for BNSF the opportunity to depose the treating physicians for the sole purpose of inquiring about their opinions on causation, with the following conditions[1]:

(1) the depositions will take place by telephone within the next month (before February 29, 2008) at a date and time convenient for all concerned;

(2) the depositions will be limited to exploring the factual basis for the opinions on causation offered by the treating physicians in their letters dated May 23, 2007, and May 24, 2007; and

(3) all "costs" associated with the taking of the depositions shall be borne by the plaintiff, i.e., court reporter fees and charges, long-distance telephone charges, and any fees that may be charged by the treating physicians for their attendance at the depositions.

B.   **TESTIMONY OF MAGELKY'S EXPERT WITNESSES**

BNSF contends that Magelky's expert witnesses should not be allowed to testify as to certain issues. Rule 702 of the Federal Rules of Evidence sets forth the standard for expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] The Court will leave it to the discretion of BNSF counsel as to whether there is a need to depose the treating physicians. The Court has no objection to the depositions being taken after February 29, 2008, if the parties can mutually agree on a date convenient for all.

Rule 702 requires that the trial judge act as a "gatekeeper," admitting expert testimony only if it is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The trial court is given broad discretion in its determination of reliability. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999); Olson v. Ford Motor Co., 481 F.3d 619, 626 (8th Cir. 2007). However, the trial judge, as gatekeeper, should not invade the jury's role of deciding issues of credibility and determining the weight to be accorded such evidence. See Arkwright Mut. Ins. Co. v. Gwinner Oil Co., 125 F.3d 1176, 1183 (8th Cir. 1997).

The Eighth Circuit Court of Appeals has established three prerequisites that must be satisfied for expert testimony to be admitted under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, 'the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . .'

Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal citations omitted) (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001)).

In the well-known case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court held that the "general acceptance" standard articulated in Frye v. United States, 293 F. 1013 (D.C. 1923), was "not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The Supreme Court has also held that the principles set forth in Daubert apply to all expert

testimony. Kumho Tire, 526 U.S. at 141 ("We conclude that Daubert's general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); accord Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).

### 1. JAN LOWE

BNSF contends that Jan Lowe is not qualified to provide an expert opinion that Magelky no longer has the ability to perform her job as a conductor. Lowe is a vocational rehabilitation consultant who met with Magelky to conduct a diagnostic interview and administer vocational testing. The Court believes that Jan Lowe has the background, training, education, and experience necessary to provide expert witness testimony as to Magelky's vocational capabilities. Therefore, Lowe is qualified to assist the jury in understanding the ultimate issues of fact. The Court finds that Lowe's opinions are reliable and relevant for purposes of Rule 702. Under Daubert, the proper means of attacking such evidence is through vigorous cross-examination and the presentation of contrary evidence. The Court **DENIES** BNSF's motion in limine that seeks to exclude Jan Lowe's testimony concerning Magelky's inability to perform her job as a conductor (Docket No. 38).

### 2. EDWARD FOSTER

BNSF argues that Dr. Edward Foster should not be allowed to provide expert testimony on Magelky's economic losses because there is no foundation for his testimony, and that if allowed to testify, his testimony would be confusing and misleading. Dr. Foster is an economic consultant who evaluated the economic losses sustained by Magelky due to her injuries. The Court believes that

6

Dr. Foster has the background, training, education, and experience necessary to provide expert witness testimony as to Magelky's economic losses. The Court finds that Dr. Foster's opinions are reliable and relevant for purposes of Rule 702. The proper means of attacking such evidence is through vigorous cross-examination and the presentation of contrary evidence. The Court **DENIES** BNSF's motion in limine that seeks to exclude Dr. Foster's testimony about Magelky's economic losses (Docket No. 39).

### 3.     RAYMOND DUFFANY

BNSF contends that Raymond Duffany should not be allowed to testify that when inspecting the site of Magelky's slip-and-fall, he fell at the same location where Magelky fell. BNSF asserts that such testimony does not constitute expert testimony under Rule 702 of the Federal Rules of Evidence, is not relevant, and even if relevant, is unduly prejudicial. The Court finds that any testimony concerning Raymond Duffany's fall at the scene of the accident would not constitute expert testimony under Rule 702. The Court further finds that, pursuant to Rule 403 of the Federal Rules of Evidence, even if relevant, the probative value of this testimony is far outweighed by its prejudicial effect. The Court **GRANTS** BNSF's motion in limine to exclude Raymond Duffany from testifying about his fall at the same general location where Magelky fell on July 3, 2004 (Docket No. 41).

### 4.     MICHAEL O'BRIEN

BNSF argues that Michael O'Brien should not be allowed to testify about the cause of Magelky's fall because he does not possess any specialized knowledge that would assist the jury in

7

understanding whether the fall was caused by a cracked knuckle. In his report, O'Brien concludes that "[b]ut for the fact that BNSF failed to detect and replace this defective knuckle prior to allowing use of car DETX 365 in Ms. Magelky's Train, Ms. Magelky would not have been required to get off the locomotive and walk the train, and would not have suffered a fall." See Docket No. 42-1. Michael O'Brien is a railroad safety consultant who certainly possesses the background, training, education, and experience necessary to provide expert witness testimony as to the existence and cause of the train's alleged malfunction. However, O'Brien does not possess the background, training, education, and experience to express the opinion that "but for" something happening on the train on July 3, 2004, Magelky would not have had to exit the locomotive and suffer a fall while inspecting the train. Magelky can explain to the jury why she exited the locomotive and how and why the fall occurred. An expert witness is not needed to present this evidence at trial. The Court **GRANTS** BNSF's motion in limine that seeks to exclude Michael O'Brien's testimony about the cause of Magelky's alleged fall (Docket No. 42).

###  C.      CHARACTERIZATION OF MAGELKY'S INJURIES

BNSF contends that Magelky should be precluded from using adjectives such as "serious" or "devastating" when describing her alleged injuries to the jury because doing so would violate Rule 611(c) of the Federal Rules of Evidence. Rule 611(c) addresses the use of leading questions during direct and cross-examination. The Court finds that describing Magelky's injuries with adjectives such as "serious" or "devastating" does not violate Rule 611(c), nor is it impermissible under any other rules of evidence or procedure. The Court **DENIES** BNSF's motion in limine that

seeks to preclude Magelky from using descriptive adjectives to describe her alleged injuries (Docket No. 40).

### D.     ALLEGATIONS OF SEXUAL ABUSE

BNSF argues that Magelky should not be allowed to bring before the jury elements of the divorce and custody disputes between Magelky and her former husband, Keith Magelky, specifically Magelky's allegations of sexual abuse and misconduct. BNSF argues that such evidence would be unfairly prejudicial pursuant to Rule 403 of the Federal Rules of Evidence. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Magelky has made a similar motion in limine to exclude evidence of allegations of abuse that stemmed from her divorce proceedings. See Docket No. 36. At this stage, the Court will defer ruling on this motion (Docket No. 43). Cindy Magelky contends that if Keith Magelky, Shirley Magelky, Larry Magelky, and Carla Shypkoski are permitted to testify, then evidence which shows bias and the motivation of these fact witnesses is fair game on cross-examination. The Court will revisit this matter before each of these witnesses are called to testify at trial. Some of this "family bashing" evidence may be admissible on cross-examination. However, the Court will not allow this trial to turn into a series of mini-trials on the litany of family horrors that have apparently plagued the Magelky family.

9

### E.  BNSF'S GENERAL CODE OF OPERATING RULES

BNSF contends that testimony or argument that BNSF's general code of operating rules establishes a standard of care should be excluded because it would be confusing to the jury.  In Gagnier v. Bendixen, 439 F.2d 57, 62 (8th Cir. 1971), the Eighth Circuit explored the theory that a "railroad's duty of due care is governed by law and not by its private practices, and that the jury would be unduly confused by an inquiry as to whether the railroad was obeying its own rules rather than whether it was meeting its legal duty of due care."  The Eighth Circuit concluded that "[n]egligence is to be measured by the legal obligation to use due care under the circumstances existing at the time of the accident."  Id.  In Ard v. Metro-North R. Co., 492 F. Supp. 2d 95, 99 (D. Conn. 2007), the court found that the railroad's safety and operating rules did not constitute legal standards.  The court further found that the railroad safety expert who testified about the railroad's operating rules did not opine on legal standards and, therefore, there was no error in allowing the expert to testify about the applicability of the railroad's safety and operating rules to the railroad's actions.  Id.  Expert testimony indicating that BNSF's operating rules establish a legal standard of care will not be allowed.  The Court **GRANTS** BNSF's motion in limine that seeks to exclude testimony or argument that BNSF's operating rules establish a standard of care (Docket No. 45).

### F.  BNSF'S DUTY TO PROVIDE A SAFE AND SUITABLE WALKWAY

BNSF contends that argument or testimony that BNSF was negligent for failing to provide a walkway beside the train tracks should not be allowed because a walkway is not required by the Federal Railroad Safety Act, and also because the issue of walkways is preempted pursuant to the

10

doctrine of federal preemption.  The United States Supreme Court has summarized the doctrine of federal preemption as follows:

> The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law.  Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

Louisiana Public Serv. Comm'n v. FCC, 476 U.S. 355, 368-69 (1986). The parties have not made the Court aware of, nor has the Court found, a North Dakota state law that proscribes or regulates walkways beside train tracks. There is apparently no North Dakota law that is preempted by a federal statute or regulation on this subject matter.  The Court will defer ruling on BNSF's motion in limine (Docket No. 46) until trial.

### III.   CONCLUSION

For the reasons set forth above, the **GRANTS** in part and **DENIES** in part BNSF's motions in limine.  (Docket Nos. 37-42, 45.)  In summary, the Court **GRANTS** BNSF's motions in limine that seek to exclude the following evidence:  Raymond Duffany's testimony about his fall; Michael O'Brien's testimony about the cause of Magelky's alleged fall; and testimony or argument that BNSF's operating rules establish a standard of care.

The Court **DENIES** BNSF's motions in limine that seek to exclude the following evidence: causation testimony by Magelky's treating physicians; Jan Lowe's testimony about Magelky's inability to perform her job as a conductor; Edward Foster's testimony about Magelky's economic

11

losses; and descriptive adjectives used to describe Magelky's alleged injuries. There are other motions that the Court defers ruling on at this stage. (Docket Nos. 43, 46.) The Court directs counsel to inform their clients and witnesses of this order and its prohibitions and allowances.

**IT IS SO ORDERED**.

Dated this 29th day of January, 2008.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court