**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Cindy M. Magelky, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION FOR JUDGMENT AS** |
| vs. | ) | **MATTER OF LAW OR NEW** |
| | ) | **TRIAL AND/OR REMITTITUR** |
| BNSF Railway Company, a | ) | |
| corporation, | ) | |
| | ) | Case No. 1:06-cv-025 |
| Defendant. | ) | |

Before the Court is the Defendant's "Renewed Motion for Judgment as a Matter of Law or, Alternatively, a Motion for a New Trial and/or Remittitur" filed on June 19, 2008. See Docket No. 89. The Plaintiff filed a brief in opposition to the motion on July 17, 2008. See Docket No. 102. The Defendant filed a reply brief on July 31, 2008. See Docket No. 107. The Court denies the Defendant's motion for the reasons set forth below.

## I.   BACKGROUND

The plaintiff, Cindy Magelky, brought suit under the Federal Employers' Liability Act, 45 U.S.C. § 51 et. seq., against the defendant, BNSF Railway Company, for injuries she suffered while employed by BNSF. A detailed recitation of the facts is set forth in Magelky v. BNSF Ry. Co., 491 F. Supp. 2d 882, 885-886 (D.N.D. 2007). Magelky claimed that on July 3, 2004, while she was working as a conductor on a BNSF train, she was injured when she fell down a slope while investigating why the train lost air pressure and came to an emergency stop. Magelky alleged that BNSF violated the Federal Safety Appliance Act, 49 U.S.C. § 20301 et. seq., and was negligent. A jury trial ensued. On May 30, 2008, the jury returned a verdict in favor of Magelky and awarded

her $136,000 in past economic damages, $614,000 in future economic damages, and $100,000 in non-economic damages.  See Docket No. 84.  The jury found that BNSF had violated the Federal Safety Appliance Act and that the violation caused, in whole or in part, Magelky's injuries.  The jury did not find BNSF negligent.

BNSF moves the Court for a judgment as a matter of law that BNSF did not violate the Federal Safety Appliance Act and that Magelky's injuries were not caused by BNSF's violation of the Federal Safety Appliance Act.  BNSF moves the Court for a new trial on causation and economic damages and, alternatively, a remittitur on economic damages.

## II.   LEGAL DISCUSSION

### A.   JUDGMENT AS A MATTER OF LAW

Rule 50(a)(1) of the Federal Rules of Civil Procedure establishes that a court may enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ."  Judgment as a matter of law is only appropriate when "all the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" Commercial Prop. Investments, Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995) (quoting White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992)).  When presented with a motion for judgment as a matter of law, a district court must (1) consider the evidence in a light most favorable to the prevailing party; (2) assume that all evidentiary conflicts were resolved in favor of the prevailing party; (3) assume, as proved, all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that may

reasonably be drawn from the facts proved.  Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997).

Once this determination is made, a court must deny the motion if reasonable persons could differ

as to the conclusions to be drawn from the evidence.  Ryther, 108 F.3d at 844.  It is a "universally

adopted standard that judges must be extremely guarded in granting judgments as a matter of law

after a jury verdict."  Id.


### 1.        VIOLATION OF THE FEDERAL SAFETY APPLIANCE ACT

The Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et. seq., was enacted in the

1930's.  FELA provides a cause of action to railroad employees for injuries "resulting in whole or

in part from the negligence of [the railroad] . . . or by reason of any defect or insufficiency, due to

its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, . . . or other

equipment."  45 U.S.C. § 51.  The Eighth Circuit has recognized that Congress intended FELA to

be a broad statute designed to be liberally interpreted to fulfill the intent of Congress.  Hane v. Nat'l

R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997).  FELA is a remedial statute grounded in

negligence although the statute does not define negligence.  To prevail on a FELA claim, a plaintiff

must generally prove the traditional common law components of negligence which include duty,

breach of duty, causation, injury, and damages.  Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th

Cir. 1990).  This includes showing whether the  railroad failed to use reasonable or ordinary care

under the circumstances.  Davis v. Burlington Northern, Inc., 541 F.2d 182, 185 (8th Cir. 1976).

The plaintiff's burden of proof in a FELA action is significantly lighter than it would be in an

ordinary negligence case.  In a FELA action, the railroad is liable if its negligence played any part,

even the slightest, in producing the injury.  Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506

3

(1957).          In addition to a negligence cause of action under 45 U.S.C. § 51, FELA also provides for certain causes of action which are not based upon negligence.  These are actions brought under FELA for injuries caused by the railroad's violation of the Federal Safety Appliance Act. 49 U.S.C. § 20301 et. seq.  The Federal Safety Appliance Act does not create a private cause of action, but employees who allege that they have been injured as a result of a safety violation may sue under FELA.  See Crane v. Cedar Rapids & Iowa City Ry. Co., 395 U.S. 164, 166 (1969).

        With respect to the Federal Safety Appliance Act, certain railroad equipment must be kept in certain prescribed condition.  If the equipment is not kept in the prescribed condition and an employee is injured, the employee may bring a cause of action under FELA.  In such cases, proof of the violation of the Federal Safety Appliance Act supplies "the wrongful act necessary to ground liability under the F.E.L.A."  Carter v. Atlanta and St. Andrews Bay Ry. Co., 338 U.S. 430, 434 (1949).  In personal injury claims brought for injuries caused by a violation of the Federal Safety Appliance Act, care on the part of the railroad is, as a general rule, immaterial.  The United States Supreme Court "early swept all issues of negligence out of cases under the Safety Appliance Act." O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 390 (1949).  However, if the plaintiff's negligence was the sole cause of the injury or death, then the statutory violation could not have contributed "in whole or in part" to the injury or death.  Beimert v. Burlington Northern, Inc., 726 F.2d 412, 414 (8th Cir. 1984).  Despite the differences between these types of claims, the claims are often intermingled.      At trial, Magelky alleged that there was a broken coupler on one of the train's cars in violation of the Federal Safety Appliance Act.  The United States Supreme Court has held that the Federal Safety Appliance Act "requires couplers which, after a secure coupling is effected, will remain coupled until set free by some purposeful act of control."  O'Donnell, 338 U.S. at 389.

4

The duty imposed on a railroad carrier by the Federal Safety Appliance Act is an absolute one. Brady v. Terminal R.R. Ass'n of St. Louis, 303 U.S. 10, 15 (1938).

BNSF contends that it is open to debate whether the current United States Supreme Court would determine that the failure of couplers to remain coupled is an automatic violation of the Federal Safety Appliance Act, particularly when the jury determines that the defendant railroad was not negligent.  However, BNSF concedes that the Court "instructed the jury, consistent with the O'Donnell decision, that if the coupler did not remain coupled, it is an automatic violation of the Federal Safety Appliance Act."  See Docket No. 90.

It is clear under the current state of the law that a railroad carrier has a duty to place in service cars with properly functioning couplers and that the presence of a defective coupler is a violation of the Federal Safety Appliance Act.  There was undisputed evidence presented during trial that one of the railroad cars had a broken coupler.  Accordingly, the jury found that BNSF had violated the Federal Safety Appliance Act.  The Court finds that the jury had a legally sufficient evidentiary basis to find that BNSF violated the Federal Safety Appliance Act.

## 2.  CAUSATION OF MAGELKY'S INJURIES

BNSF has moved for judgment as a matter of law on the grounds that Magelky's injuries were not caused by BNSF's violation of the Federal Safety Appliance Act.  FELA's most distinctive departure from the common law is in the area of causation.  45 U.S.C. § 51 establishes a standard of "in whole or in part" causation which replaces the common law standard of proximate causation. To impose liability on the defendant, the negligence need not be the proximate cause of the injury. "The test of causation under the FELA is whether the railroad's negligence played any part, however

small, in the injury which is the subject of the suit." <u>Fletcher v. Union Pac. R.R. Co.</u>, 621 F.2d 902, 909 (8th Cir. 1980).

It is well-established that under FELA, contributory negligence is not a bar to recovery. Instead, contributory negligence may only be used to proportionately reduce the plaintiff's damages. 45 U.S.C. § 53; <u>Flanigan v. Burlington Northern, Inc.</u>, 632 F.2d 880 (8th Cir. 1980).  However, if the negligence of the employee is the sole cause of any resulting injuries or death, there is no liability because the railroad did not cause or contribute to cause the employee's injury or death. <u>New York Cent. R. R. Co. v. Marcone</u>, 281 U.S. 345, 350 (1930); <u>Meyers v. Union Pac. R. R. Co.</u>, 738 F.2d 328, 331 (8th Cir. 1984).

Thus, FELA establishes a standard of "in whole or in part" causation that replaces the common law standard of proximate causation.  Once a violation of the Federal Safety Appliance Act is established, "only causal relation is in issue.  And Congress has directed liability if the injury resulted 'in whole or in part' from defendant's . . .  violation of the Safety Appliance Act." <u>Carter</u>, 338 U.S. at 434-35.   BNSF contends that proximate cause and not "but for" causation was the standard that should have been applied to BNSF's actions, but concedes that the issue of causation is one for the jury.

It is clear that under FELA the proper test of causation is "in whole or in part."  Evidence was presented during trial that a broken coupler caused the train to stop, that Magelky disembarked the train to investigate the problem, and that during the investigation she was injured.  In Final Jury Instruction No. 21, the Court instructed the jury that the third element required to find a violation of the Federal Safety Appliance Act was that the violation resulted, in whole or in part, in Magelky's injuries. <u>See</u> Docket No. 82.  This was an appropriate instruction warranted by the evidence and in

6

accordance with the law.  The jury subsequently found BNSF liable under FELA using the "in whole or in part" test of causation.  The Court finds that the jury had a legally sufficient evidentiary basis to find that BNSF's violation of the Federal Safety Appliance Act caused, in whole or in part, Magelky's injuries.


**B.**   **NEW TRIAL**

BNSF moves the Court for a new trial on numerous causation and economic damages issues. Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides that the "court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "Deciding a motion for a new trial is a matter committed to the sound discretion of the trial court."  O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200 (8th Cir. 1990).  A new trial "should only be granted if 'the verdict is against the weight of the evidence and . . . allowing it to stand would result in a miscarriage of justice.'"  The Shaw Group, Inc. v. Marcum, 516 F.3d 1061, 1067 (8th Cir. 2008) (quoting Jones v. TEK Indus., Inc., 319 F.3d 355, 358 (8th Cir. 2003)).  A jury's verdict will not be set aside on appeal "'unless the district court clearly and prejudicially abused its discretion in determining whether or not to admit evidence.'"  The Shaw Group, Inc., 516 F.3d at 1068 (quoting Allied Sys., Ltd. v. Teamsters Transp., Local 604, 304 F.3d 785, 791 (8th Cir. 2002)).


**1.**   **CAUSATION**

BNSF contends that the jury's finding of causation is against the weight of the evidence. When determining whether a jury's verdict is against the weight of the evidence, a district court may

rely on its own reading of the evidence. <u>White</u>, 961 F.2d at 780. A court may weigh the evidence, disbelieve witnesses, and grant a new trial even if there is substantial evidence to sustain the verdict. <u>Id.</u>

BNSF argues that it is entitled to a new trial on causation based on a proximate cause standard. As previously noted, FELA establishes a standard of "in whole or in part" causation that replaces the common law standard of proximate causation. 45 U.S.C. § 51. Evidence was presented during the trial that a broken coupler caused the train to stop, that Magelky disembarked the train to investigate the problem, and that during the investigation she was injured. The jury found BNSF liable under FELA using the "in whole or in part" test of causation. The jury's verdict was based on the proper causation standard and does not result in a miscarriage of justice. The Court finds that the jury's verdict was not against the weight of the evidence.

## 2.   "BUT FOR" TESTIMONY

BNSF contends that the Court erroneously allowed Magelky's counsel to cross-examine one of BNSF's expert witnesses with "but for" questions about whether the accident would have occurred if the coupler had not uncoupled. BNSF objected at trial "because this was in direct contravention of the spirit and letter of the Court's order not allowing expert testimony on this issue." <u>See</u> Docket No. 90. "Evidentiary rulings are generally reviewed for abuse of discretion, including the district court's decision to admit expert testimony." <u>The Shaw Group, Inc.</u>, 516 F.3d 1061, 1068 (8th Cir. 2008) (internal citations omitted). BNSF has failed to adequately explain how the allowance of "but for" testimony rises to the level of prejudicial abuse of discretion. The Court did not abuse its broad discretion by allowing the expert testimony.

### 3.      JURY INSTRUCTIONS ON CAUSATION

BNSF contends that Final Jury Instruction No. 11 improperly allowed the jury to find causation if "the act or omission played any part, no matter how small, in bringing about or actually causing the injury or damage."  BNSF contends that the jury should have been instructed that there is no proximate cause if the violation of the Federal Safety Appliance Act "merely created an incidental condition or situation in which an accident, otherwise caused, resulted in plaintiff Magelky's injury," and that if Magelky's negligence was the sole cause of her injury a verdict must be returned in favor of BNSF.  See Docket No. 90.

Jury instructions are intended to focus attention on the essential issues in a case.  Gray v. Bicknell, 86 F.3d 1472, 1485 (8th Cir. 1996).  The trial court has broad discretion to instruct the jury in the form and language it considers fair and adequate to best present the substantive law.  Id.  "A party is entitled to an instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it."  Id.  However, a party is not entitled to a specific formulation of an instruction.  Id.  On appeal, the Court's jury instructions are to be taken as a whole when reviewed for error.

The Court has established that "in whole or in part" causation, and not proximate causation, is the standard to apply in FELA cases.  Final Jury Instruction No. 11, along with the remaining jury instructions, set forth the proper standard on causation and fairly and adequately presented the substantive law, including the effect of Magelky's negligence, to the jury.

### 4.   <u>EXCESSIVE ECONOMIC DAMAGES</u>

BNSF contends that the jury's damage award was excessive and unsupported by the evidence.  BNSF argues that the jury's award for future economic loss should not have exceeded Dr. Edward Foster's expert opinion that Magelky's future loss was $545,050, and that her future household damages and her contribution to employment taxes should be excluded from her future economic damages.  BNSF contends that Magelky's past economic damage award is not supported by the evidence because Magelky could have worked from 2005 to 2007.  "A verdict should be set aside as excessive only when it is so excessive that it shocks the conscience."  <u>Bonner v. ISP Technologies, Inc.</u>, 259 F.3d 924, 932 (8th Cir. 2001).  "The determination of the amount of damages is peculiarly within the province of the jury.  Such determination rests largely in its discretion."  <u>Taylor v. Otter Tail Corp.</u>, 484 F.3d 1016, 1020 (8th Cir. 2007) (quotation omitted).

Dr. Foster, Magelky's economic damages expert at trial, testified that Magelky had a net future wage loss ranging between $545,050 and $621,421, depending on when she would have retired.  The jury's future economic damages award of $614,000 was within the range provided by Dr. Foster,  does not shock the conscience, and should be left to the judgment and discretion of the jury.  Evidence was presented at trial regarding Magelky's reasons for not working from 2005 to 2007.  Subsequently, the jury awarded past economic damages which were less than Dr. Foster's opined amount.  The Court finds that the economic damages that were awarded do not shock the conscience and were supported by the evidence presented at trial.

Alternatively, BNSF moves for a remittitur on the economic damages.  "A remittitur is a substitution of the court's judgment for that of the jury's regarding the appropriate award of

damages.  The court orders a remittitur when it believes the jury's award is <u>unreasonable</u> on the facts."  <u>Ross v. Kansas City Power & Light Co.</u>, 293 F.3d 1041, 1049 (8th Cir. 2002) (quoting <u>Johansen v. Combustion Eng'g, Inc.</u>, 170 F.3d 1320, 1331 (11th Cir. 1999)) (emphasis in original). The Court declines to substitute its judgment for that of the jury's regarding damages because the jury's award was not unreasonable.


## 5.      TESTIMONY OF DR. FOSTER

BNSF also contends that the testimony of Dr. Edward Foster should have been excluded based on a lack of foundation.  BNSF contends that Dr. Foster's loss of earnings calculations were based on "peer group" analysis for which there was inadequate foundation, and that Dr. Foster's opinion lacked foundation as to Magelky's alleged future loss of household services.  In a motion in limine filed on June 18, 2007, BNSF argued that Dr. Foster should not be allowed to provide expert testimony on Magelky's economic losses because of a lack of foundation for his testimony, and that if allowed to testify, his testimony would be confusing and misleading.  <u>See</u> Docket No. 39. The Court found, in its order denying the motion in limine, that Dr. Foster had the background, training, education, and experience necessary to provide expert witness testimony as to Magelky's economic losses, and that Dr. Foster's opinions were reliable and relevant for purposes of Rule 702 of the Federal Rules of Evidence.  <u>See</u> Docket No. 67.  The Court finds no reason to vary from its original ruling.  Dr. Foster was subjected to vigorous cross-examination at trial.  The Court did not abuse its broad discretion by allowing Dr. Foster's testimony.

6.     **TESTIMONY OF TERRY BERGER**

BNSF argues that Terry Berger, who was the local union chairman at the time of the incident, was improperly allowed to provide testimony at trial on damages because he was not identified as a person with discoverable information on damages. BNSF contends that Magelky improperly used Berger as an expert witness on damages. Berger's factual testimony was limited to his personal knowledge as a BNSF conductor and as union chairman. Magelky argues that Berger testified about the railroad industry's seniority system and how it affects the wages of conductors and locomotive engineers, and wages earned by conductors and locomotive engineers. The Court finds that Berger was not an expert witness, he did not present expert opinion testimony at trial, and he need not be identified as a person with discoverable information on damages. The Court did not abuse its discretion by allowing Berger's factual testimony at trial.


7.     **MAGELKY'S EARNING CAPACITY**

BNSF argues that Magelky should not have been able to introduce evidence on future earning capacity based on an assumption that she would have continued working as a conductor because there was no evidence presented to that effect. BNSF argues that the jury should not have been allowed to use her earning capacity as a conductor in calculating her future lost income. "It is settled law that in a FELA case, a plaintiff may recover compensatory damages for lost earning capacity." Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1284 (3d Cir. 1995). If a plaintiff has shown that her injury has caused a diminution in her ability to earn a living, she may recover damages covering the extent to which the railroad caused the diminution in earning capacity. Id. Recovery is only appropriate when the plaintiff has produced competent evidence that

suggests her injuries have narrowed the range of economic opportunities available to her.  The Court finds that competent evidence was presented at trial that Magelky's range of economic opportunities had been narrowed because of her injuries.  The factual determination is one to be made by the jury. The Court did not abuse its discretion by allowing evidence on Magelky's future earning potential as a conductor.

## 8.     EXCLUSION OF PROBATIVE EVIDENCE

BNSF contends that it was prejudiced by the Court's exclusion of highly probative evidence of Magelky's intimidation of witnesses.  BNSF argues that Keith Magelky was not allowed to testify that he had been threatened with perjury by Magelky if he were to testify consistent with his deposition testimony that Magelky forecasted an injury before her employment with BNSF had ended.  BNSF argues that Kirsten Bray was not permitted to testify about Magelky's actions involving information contained on Bray's home computers.

The admission of evidence is left to the discretion of the trial court.  Rule 403 of the Federal Rules of Evidence dictates that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  The Court, in its discretion, determined at trial that the probative value of this evidence was far outweighed by its prejudicial value.  There was an extensive record made on the evidentiary rulings both before and during the trial.  The Court afforded BNSF great latitude at trial in presenting probative, prejudicial, disparaging, and damaging evidence on Magelky's background and her character.  Ultimately, Rule 403 considerations warranted the need to end the parade of horribles and avoid further confusion of the issues, undue delay, waste of time, and the needless

13

presentation of cumulative evidence.  The basis for the discretionary, evidentiary rulings is well-documented in the record.  The Court did not abuse its broad discretion by excluding this evidence.

### 9.    CROSS-EXAMINATION OF MAGELKY

BNSF also contends that it was unfairly prejudiced by the Court's ruling that BNSF could not fully cross-examine Magelky on allegedly false representations she had made on her post-offer medical questionnaire.  BNSF contends that the jury received an unclear picture of Magelky's credibility and of her undisclosed medical condition at the time she became a BNSF employee.

The admission of evidence is left to the sound discretion of the Court and even probative evidence can be excluded if it will result in unfair prejudice or confusion.  See Fed. R. Evid. 403.  The Court, in its discretion, determined at trial that the probative value of further medical questionnaire evidence was far outweighed by its prejudicial value.

BNSF chose to defend this case in substantial part by presenting evidence and argument that Magelky had fabricated the entire slip-and-fall incident and her resulting injuries, and that she had schemed in advance to submit a false claim to recover a large settlement from BNSF.  In other words, the heart of BNSF's defense at trial was that Magelky's claims were an outright sham.

The problem for BNSF was not that the Court failed to allow BNSF sufficient latitude to pursue this very aggressive defense.  Quite the contrary, the Court allowed BNSF great latitude in its attempt to portray Magelky in a disparaging and unfavorable light, including aggressive attacks on her basic character that far surpassed the norm.  It was only when BNSF's litany of medical evidence and cross-examination became needlessly repetitive and cumulative that the Court

14

concluded there was a need to invoke Rule 403 considerations to avoid confusion of the issues, unnecessary delay, waste of time, and the presentation of cumulative and redundant evidence.

Rather, the problem for BNSF was that its tactics backfired, particularly in light of other evidence that clearly revealed that a slip-and-fall incident had occurred at work on July 3, 2004, including an acknowledgment by BNSF's medical expert and several treating physicians that Magelky had suffered an injury.  In short, it was not that the jurors did not have a clear picture of the Cindy Magelky that BNSF was attempting to paint at trial; they simply did not agree it was all that relevant and the jury was clearly turned off by BNSF's aggressive approach.  The Court did not abuse its broad discretion by limiting the cross-examination of Magelky at trial.


### 10.     CAUSATION TESTIMONY OF TREATING PHYSICIANS

BNSF argues that it was unfairly prejudiced by the Court's allowance of causation testimony by Magelky's treating physicians, and by testimony beyond the scope of their medical records.  The Court had previously denied BNSF's motion in limine that sought to exclude the causation testimony of Magelky's treating physicians.  See Docket No. 67.  The Court finds no reason to vary from its previous order.  The Court did not abuse its discretion by allowing Magelky's treating physicians to testify on causation issues.  Each of the treating physicians was subjected to lengthy and aggressive cross-examination at trial, and no prejudice occurred as a result of the physicians' expected and previously-disclosed testimony.

11.   <u>**MISCONDUCT BY MAGELKY'S COUNSEL**</u>

Finally, BNSF contends that Magelky's trial counsel engaged in misconduct during the trial that unfairly prejudiced BNSF. BNSF argues that it should receive a new trial because Magelky's trial counsel referred to the lawsuit as Magelky's sole source of recovery and questioned the character of BNSF and its counsel during closing arguments. When a motion for a new trial is based on allegations of misconduct by counsel or improper arguments, a new trial is appropriate only if the statements were plainly unwarranted, clearly injurious, caused prejudice to the opposing party, and unfairly influenced the jury's verdict. <u>Harrison v. Purdy Bros. Trucking Co.</u>, 312 F.3d 346, 351 (8th Cir. 2002).

The Court finds that there was no misconduct or improper argument presented by plaintiff's trial counsel which would warrant a new trial. Even assuming for the sake of argument that there were comments made by plaintiff's counsel which were in any manner improper, BNSF has not provided sufficient evidence to demonstrate that any such comments or arguments were clearly injurious, that BNSF was prejudiced, or that the jury's verdict was in any way affected by the arguments made by trial counsel. The Court expressly finds that none of the comments made by Magelky's trial counsel rose to a level that necessitates a new trial. In context, the challenged comments were arguably warranted in response to the criticism and condemnation of Magelky, the ongoing and likely ill-advised efforts by BNSF to challenge the fact that a slip-and-fall had ever occurred at work, and the persistent efforts made to disparage Magelky's claims and her basic character. None of the comments and arguments made at trial by counsel for the plaintiff <u>or</u> counsel for BNSF were plainly unwarranted, clearly injurious, caused prejudice to the opposing party, or in any manner unfairly influenced the jury's verdict.

16

III.    <u>**CONCLUSION**</u>

The Defendant's "Renewed Motion for Judgment as a Matter of Law or, Alternatively, a

Motion for a New Trial and/or Remittitur" (Docket No. 89) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of October, 2008.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

17